# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSAN K. BOATWRIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-07-121-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Susan K. Boatwright requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings by the ALJ.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only "if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless,

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the Court must review the record as a whole, and "[t]he substantiality of [the] evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on June 6, 1958, and was forty-seven (47) years old at the time of the administrative hearing. She has a high school education but no history of relevant work experience. The claimant alleges she has been disabled since July 1, 2004, due to depression, dizziness, numbness and tingling throughout her upper and lower extremities, and pain and/or arthritis in her spine, hands, wrists, elbows, shoulders, left lower extremity, right hip, right knee, ankles, and feet.

### Procedural History

On August 16, 2004, the claimant filed an application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The application was denied. An administrative hearing was conducted and ALJ Lantz McClain found that the claimant was not disabled in a decision dated August 18, 2006. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant's inflammatory arthritis and morbid obesity were severe impairments (Tr. 13), but that she had the residual functional capacity ("RFC") to perform light work, *i. e.*, she

could lift/carry up to twenty pounds occasionally and ten pounds frequently and she could stand/walk/sit six hours out of an eight-hour work day, limited to pushing and pulling up to twenty pounds occasionally and ten pounds frequently, and no balancing, stooping, kneeling or crawling (Tr. 16-17). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work in the regional and national economies she could perform, *e. g.*, unskilled sales work, cashier-toll collector and assembler (Tr. 17).

## Review

The claimant contends that the ALJ erred: (i) by failing to properly evaluate the medical evidence, *e. g.*, the medical opinions of her treating physician Dr. Richard J. Helton; (ii) by finding she had the RFC to perform any substantial gainful activity; and, (iii) by failing to properly analyze her credibility. The Court finds the first contention dispositive.

Dr. Richard J. Helton was the claimant's treating physician during the period under review (Tr. 152-58, 182-98, 236-37, 239-43). *See* Tr. 16 ("Internist Helton has been [the claimant's] physician for years[.]"). The record consists of Dr. Helton's treatment notes from May 2002 through December 2005 (Tr. 182-98, 239-43), a March 2004 examination and evaluation (Tr. 152-58), and a December 2005 Medical Source Statement (MSS) (Tr. 236-37). In June 2002, Dr. Helton noted that the claimant's extremities had light edema (Tr. 193). In January 2003, the claimant complained that she had left arm weakness and that both hands ached (Tr. 189). In February 2003 the physician noted pedal edema (Tr. 188). In January 2004, the claimant complained of "burning in hands, numbness and pain [in]

shoulders, elbows, and across chest" and the physician noted some bilateral pain and joint swelling that he diagnosed as inflammatory joint disease as claimant's rheumatoid factor was negative (Tr. 184). In March 2004, Dr. Helton examined the claimant and completed a full physical and range of motion evaluation (Tr. 152-58). The treatment notes contained complaints of numbness and tingling in the claimant's hands and feet with pain in her extremities (Tr. 183). The full evaluation noted "multiple joint pain and numbness in the hands," "some low back pain, which stays in the back, but occasionally it might go to the right hip," left leg and bilateral hand swelling and left leg pain, "trouble using her hands" due to pain, decreased hand strength, "occasional shortness of breath, and shortness of breath with exertion," "numbness and tingling in her hands and feet," and "some dizziness." (Tr. 152.) The physical examination revealed the patient was 5' 2" tall and weighed 263 pounds; she had a stable gait; her lungs had "decreased breath sounds, but no wheezes or rales;" and no lower extremity pedal edema was present (Tr. 153-54). Complete range of motion evaluation charts accompany the evaluation (Tr. 155-58) and note the following: weak heel walking (Tr. 154, 158); "tenderness in the lumbar area" (Tr. 154, 158); some symmetrical pain with range of motion (Tr. 154, 158); and knees will not flex past 110-120 degrees due to claimant's weight (Tr. 154, 155). Again, in June 2004 the claimant complained of hand numbness (Tr. 182). In December 2005 Dr. Helton completed a MSS based on his treatment of the claimant from October 2000 through December 2005 (Tr. 236-37). In his MSS, Dr. Helton assessed the claimant's RFC to consist of a maximum of frequently or occasionally lifting/carrying less than five pounds, standing and/or walking two hours of an eight-hour

work day with continuous standing and/or walking limited to ten to fifteen minutes, sitting for one hour of an eight-hour work day, limited pushing and pulling with hand or foot controls, the need to lie down to control pain during the work day, and only occasional crouching, reaching or handling with no climbing, balancing, stooping, kneeling, crawling, fingering or feeling (Tr. 236-37).

Medical opinions from a treating physician such as Dr. Helton are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if such opinions are not entitled to controlling weight, the ALJ was required to determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§§] 404.1527[, 416.927].'"), *quoting Watkins*, 350 F.3d at 1300. Those factors are the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and, (vi) other factors brought to the ALJ's attention which tend to support or

contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). Finally, if an ALJ intends to reject outright any medical opinion from a treating physician such as Dr. Helton, he is required to "give 'specific, legitimate reasons' for doing so." *Id*. at 1301, *quoting Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996).

In analyzing the medical opinions expressed by Dr. Helton in the medical source statement he prepared in December 2005, the ALJ found that the functional limitations imposed on the claimant were excessive given the "basically unremarkable" examinations with only a few "indications of swelling, tenderness to pressure and pain on motion or limited range of motion." The ALJ also observed: (i) that the claimant had lost no weight and had not complained of fatigue; (ii) that there was "no evidence of vascomotor constriction with complaints of coldness of hands and feet or fever"; and, (iii) that while the claimant might have some morning stiffness for thirty minutes, this not disabling (Tr. 16). The ALJ concluded that Dr. Helton was simply "parenting" the complaints of his patient and that his opinions were therefore entitled to no weight (Tr. 16).

The ALJ's consideration of Dr. Helton's medical opinions was obviously deficient under the legal standards set forth above. Instead of following the proper procedure, *i. e.*, evaluating the opinions for controlling weight and then for whatever lesser weight he found appropriate, the ALJ evidently went straight to the outright rejection stage and simply stated his reasons for giving Dr. Helton's opinions no weight. However, those reasons do not apper to be supported by the claimant's medical evidence. For example, the record indicates that

the claimant's weight was in a constant state of flux;[2] that physicians other than Dr. Helton had observed her fatigue, *e. g.*, Dr. McAlester, Tr. 132 and Dr. Leahey, Tr. 204, 206, 246); and that while she did not complain of coldness in her extremities, she *did* complain repeatedly of numbness or tingling (Tr. 152, 182, 183, 184), and not only to Dr. Helton (Tr. 132, 251). Further, the reference to morning stiffness came not from Dr. Helton, but from Dr. Leahey, who observed that the claimant's "[p]rominent symptoms include fatigue, morning stiffness *over 1 hour* and swelling" (Tr. 204) [emphasis added], and that the pain "worsens as the day progresses" (Tr. 204). Finally, the ALJ's conclusion that Dr. Helton was merely "parenting" the claimant's complaints suggests suspicion by the ALJ that Dr. Helton simply accommodated his patient, an improper reasons for rejecting a treating physician's medical opinions. *See Langley*, 373 F.3d at 1121 ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due*

---

    [2]    The claimant has gained and lost weight constantly, *i.e.*, in 2002 her weight spanned from 260 to 285 pounds, in 2003 it spanned from 255 to 266 pounds, in 2004 it spanned from 256 to 270 pounds and in 2005 it spanned from 256 to 281 pounds.

*to his or her own credibility judgments, speculations or lay opinion.*'") [internal citation omitted], *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) [quotations omitted] [emphasis in original]. *McGoffin*, 288 F.3d at 1253 (finding "that an ALJ's assertion that a family doctor naturally advocates his patient's cause is not a good reason to reject his opinion as a treating physician."), *citing Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for proper analysis of the medical opinions expressed by Dr. Helton. As this analysis may in turn affect the ALJ's determination of the claimant's credibility and her RFC, the Court declines to address the claimant's second and third contentions at this time. On remand, the ALJ should reconsider Dr. Helton's opinions according to the proper legal standards and determine what impact, if any, such reconsideration has on the claimant's credibility and her ability to work.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 26th day of September, 2008.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**